IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARROLL GAYLORD, # 353-279 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-12-2477 |
| MICHAEL J. STOUFFER, Commissioner, et al. | * | |
| | * | |
| Defendants | | |
| | *** | |

**MEMORANDUM OPINION**

Pending is Carroll Gaylord's ("Gaylord") Complaint under 42 U.S.C. § 1983. Defendants Michael J. Stouffer and Bobby Shearin ("State Defendants") by their counsel, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 30), and Defendants Corizon, Inc. (f/k/a Correctional Medical Services, Inc.) ("Corizon"), Monica Metheny, R.N., Timberlie Adams, R.N., William Breeman, R.N., Steven Bray, R.N., Breanna Brown, R.N., Autumn Durst, R.N., Delores Adams, R.N., Greg Flury, P.A. and Colin Ottey, M.D. ("Medical Defendants"), through counsel, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 32). Gaylord has filed oppositions to both dispositive motions. (ECF Nos. 34 and 35).

After considering the record, exhibits, and applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6 (Md. 2011). Defendants' Motions (ECF No. 30 and 32) will be treated as Motions for Summary Judgment and, for reasons to follow, will be granted by separate Order.

**BACKGROUND**

Gaylord, a self-represented litigant, is an inmate at North Branch Correctional Institution. He claims that he has been denied adequate medical care in violation of his rights under the Eighth Amendment. Specifically, he asserts that for over three years he has suffered chronic, unbearable pain in his head, causing him to blackout, convulse, and shake involuntarily. (ECF No. 1, p. 8). Gaylord faults medical providers for allegedly misdiagnosing the cause of his symptoms as high blood pressure. He states that when he was "finally" sent to Bon Secours Hospital for a CT scan[1] the test found a "drainage mucus retention-cyst on the left maxillary of the brain as the culprit for the pain." *Id*; *see also* Plaintiff's Ex. 2; ECF No. 32, Corizon, Exhibit 1, p. 95. (medical report finding a small mucus retention cyst in the "right maxillary sinus."). He claims that after he was diagnosed with the cyst, medical providers prescribed ineffective medication and failed to refer him to a specialist for his "brain condition." (ECF No. 1, p. 8). As relief, he requests declaratory relief, compensatory, and punitive damages. *See id*, pp. 8-10).[2]

**FACTS**

Verified medical records filed by Defendants in support of their dispositive motions provide the following information. Gaylord has presented complaints of dizziness since at least 2009. (ECF No 30, Exhibit 1). Initially, healthcare providers treated his symptoms of dizziness

---

[1] A computed tomography (CT) scan is an imaging method that uses x-rays to create pictures of cross-sections of the body. *See* http://www.nlm.nih.gov/medlineplus/ency/article/003330.htm.

[2] In the body of the Complaint, Gaylord also requests damages against the Division of Correction ("DOC"). Gaylord has not, however, named the DOC as a Defendant in this action. Further, Gaylord cannot seek damages against the DOC under 42 U.S.C. §1983 because it is not a "person" amenable to suit under the statute. *See Will v. Michigan Department of State Police*, 491 US 58 (1989). Further, the state of Maryland has not waived its sovereign immunity. Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984). While Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Ann. Code, State Gov't Art., § 12-201(a)(2004 Repl. Vol.), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

with medications such as Dramamine and Antivert. (ECF No. 30, Exhibit 1, at pp. 3, 9, 15; ECF No. 32, Exhibit 1, pp. 196-201, 208, 212, 228-231, 235-239).[3] In August of 2010, Gaylord was told that his high blood pressure could be the cause of his dizziness. He began treatment for hypertension, the symptoms of which include headaches and dizziness. (ECF No. 30, Exhibit 1 p. 20; ECF No. 32, Exhibit 1, pp. 244, 247, 251-252).

Gaylord intermittently complained of headaches in November of 2002, August of 2009 and April of 2010. (ECF No. 30, Exhibit 1, pp. 35, 42-67; ECF No. 25 Exhibit 1. pp. 1-2). In October of 2011, a CT scan was ordered for Gaylord. *See id*., p. 47. The CT scan found a small fluid retention cyst in the right maxillary sinus. (ECF No 30, Exhibit 2, p. 15). The test findings were otherwise unremarkable. *See id*. Notably, the medical record states the cyst is not located in the brain, as Gaylord asserts, but in his sinus. *See id.*[4] Gaylord receives Naproxen and Excedrin for pain relief, and was assigned to a bottom bunk to minimize the risk of falling when dizzy. *See id*. p. 67 and 68.

On November 29, 2011, Colin Ottey, M.D. met with Gaylord to discuss the CT scan results. Dr. Ottey wrote:

> The patient [Gaylord] presented for followup of CT scan results. The scan revealed a probable mucous retention cyst in the roof of [Gaylord's] right maxillary sinus. He has facial pain/pressure. Will discuss with ENT. The results were reviewed with the patient.[5]

---

[3] Gaylord was also treated during this period for back, groin, and thigh pain. (ECF No. 32, Exhibit 1).

[4] Gaylord appears to misunderstand the nature of the cyst. The court notes he submitted several sick call requests asking whether the cyst was cancerous, can be treated with medication, its cause, and whether surgery was indicated. (ECF No. 32, Exhibit 1, pp. 40-42).

[5] Mucous retention cysts develop along the lining of the sinus and are considered common. Jeffrey E. Terrell, MD, Sinus Surgery: Mucoceles Versus Mucous Retention Cysts–What's the Difference?http://www.sinus411.com/?p=53 (accessed June 7, 2013). They do not cause problems in most cases, although very rarely a cyst can cause a blockage of the nose after filling with fluid. *See id.* Most doctors take a "wait and see" approach to mucous retention cysts in the sinuses, and the vast majority don't require removal. J.H Wang, "Natural Course of Retention Cysts of the Maxillary Sinus; Long-term Follow-up Results.*"See* http://www.ncbi.nlm.nih.gov/pubmed/17277631 (accessed June 7, 2013).

*Id*. at 48. [6]

1. **Administrative Remedies**

On December 23, 2011, Gaylord completed a Request for Administrative Remedy (ARP) in which he complained of experiencing chronic pain in his brain due to a cyst, and that NBCI failed to provide the proper facilities, items and equipment for treatment. (ECF No. 30, Exhibit 2, p. 3). The ARP was dismissed on January 4, 2012, after review of Gaylord's medical records showed: he had a small cyst on the roof of his right maxillary sinus; his health providers had ordered an EKG, medication and referred him to optometry during his December 13, 2011, medical visit; he was being monitored and treated for his symptoms; and was scheduled for follow-up visits on January 3, 2012, and one month thereafter. *See id*. at pp. 3, 7.

Gaylord appealed the dismissal of his ARP to the Commissioner of Correction in an appeal dated January 24, 2012. *See id*. p.17. On January 25, 2012, Gaylord filed a grievance with the Inmate Grievance Office (IGO). (ECF No. 30, Exhibit 3, Declaration of Scott Oakley, Executive Director of the IGO, at ¶3). The Commissioner of Correction dismissed the appeal on February 8, 2012, pending a resubmission with additional information. (ECF No. 30, Exhibit 2, p. 17). The IGO administratively dismissed Gaylord's grievance on March 16, 2012, because it concerned the services and employees of a private healthcare contractor which are beyond the jurisdiction of the IGO. (ECF No. 30, Exhibit 3, at ¶3).

2. **Shearin Declaration**

Bobby Shearin, Warden at NBCI, has submitted a declaration attesting that his "responsibilities are solely to act as chief administrator of NBCI.... It is beyond the scope of [his] job title... to perform any kind of medical, dental, or mental health treatment on a patient or

---

[6] No records have been filed to indicate whether Gaylord's case was discussed with an ear, nose, and throat specialist ("ENT") or the results of the consultation if in fact it occurred.

prescribe a particular course of treatment." (ECF No. 30, Exhibit 4, Declaration of Warden Bobby Shearin, p. 2 at ¶2). Shearin declares he has no "supervisory control over the medical care providers," and lacks authority to "dictate the kind of treatment a patient is to receive," or to "influence the medical decisions of the private health care providers contracted to work with the state." *Id*. at ¶3. Shearin attests that he "neither interfered with nor delayed the provision of health care to inmate Gaylord." *Id*. at ¶4

## STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must demonstrate through the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that a reasonable jury would be unable to reach a verdict for the non-moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). When this burden is satisfied, the non-moving party then bears the burden of demonstrating that there are disputes of material fact and that the matter should proceed to trial. *See Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *See id.* at 249. Further, a court must construe the facts in the light most favorable to the party opposing the motion. *See United States*

*v. Diebold*, 369 U.S. 654, 655 (1962); *In re: Apex Express Corporation*, 190 F.3d 624, 633 (4th Cir. 1999). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. Mindful that Gaylord is a self-represented litigant, this court construes his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

### I. Medical Defendants

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staffs were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness
6

on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Under the facts alleged, Gaylord fails to show the Medical Defendants acted with requisite deliberate indifference to his serious medical needs. His medical records evidence continuous and on-going medical treatment for dizziness reaching back to 2009. Medical providers responded to his sick call slips and provided treatment. When healthcare professionals diagnosed him with hypertension and suspected that it was causing his dizziness, they provided treatment. Later, when he complained of headaches, medical providers arranged for Gaylord to have a CT scan. Gaylord has been and continues to be treated for the cyst found on the CT scan. Gaylord's disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975). Mere "[q]uestions of medical judgment are not subject to judicial review." *Russell v. Sheffer,* 528 F.2d 318, 319

(4th Cir. 1975); *see also Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").

In granting summary judgment to the Medical Defendants the court does not imply that the Gaylord is not entitled to medical treatment for his reported painful condition. Even when the facts are viewed in the light most favorable to Gaylord, however, there is no genuine issue of material fact in dispute. Gaylord's allegations of inadequate medical treatment do not amount to a claim of constitutional magnitude. The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). The undisputed evidence is that the Gaylord's complaints have been considered, investigated and treated. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985), *citing Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970). There are no exceptional circumstances presented in this case.

**II.      State Defendants**

To state a constitutional claim under the Eighth Amendment for inadequate medical care, an inmate must show the actions or inactions of prison authorities show "deliberate indifference" to a "serious medical need." *See Estelle v. Gamble*, 429 U.S. 97 (1976). Additionally, the Defendant must have been personally involved in the allegedly unconstitutional action or omission to act. *See West v. Atkins*, 815 F.2d 993 (4th Cir. 1987). Neither J. Michael Stouffer, Commissioner of Correction nor Bobby Shearin are medical practitioners. Neither personally participated in or interfered in Gaylord's medical care.

Moreover, as non-medical supervisory prison officials, they are entitled to rely on the medical judgment and expertise of prison physicians and medical staff concerning the course of treatment necessary for inmates. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with an inmate's medical treatment ordered by such personnel). Gaylord does not allege the State Defendants interfered or hindered his medical care.

Lastly, supervisors in a § 1983 action may not be held liable based upon a theory of respondeat superior.[7] *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Instead, supervisory liability is "determined 'by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.' " *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)). "Supervisory liability under § 1983 must be supported with evidence: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud,* 13 F.3d at 799. This case does not satisfy the standard for assigning supervisory liability. First, as earlier noted, Gaylord's assertions of inadequate

---

[7] Respondeat superior is a legal doctrine whereby an employer may be held responsible for its employees.

medical care do not constitute a claim of constitutional magnitude. *See infra*. pp. 6-8. Next, insofar as Gaylord intends to hold the State Defendants responsible for allegedly inadequate medical care based on their responses to his administrative requests and grievances, inmates do not have a constitutionally protected right to a grievance procedure. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It bears noting too, that Gaylord's ARP was investigated and responded to in a timely manner.

For these reasons, no legal grounds exist for finding the State Defendants culpable based on supervisory liability. Consequently, the State Defendants are entitled to summary judgment in their favor as a matter of law.

## CONCLUSION

When viewing the facts in the light most favorable to Gaylord, the court finds there are no genuine issues of a material fact and summary judgment in favor of the State and Medical Defendants is appropriate. A separate order follows.


Date:   June 11, 2013                             /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge